## McCLINTIC–MARSHALL CONST. CO. v. MUNSON S. S. LINE.

### (Circuit Court of Appeals, Second Circuit. May 22, 1922.)

### No. 291.

Shipping ☞108—Under contract for transportation of material and erection out-fit from United States to Canal Zone, and for transportation of outfit from Canal Zone back to United States, provision as to tonnage of shipment held applicable to transportation of outfit back to United States.

Under contract for transportation of construction material and erection equipment from the United States to the Panama Canal Zone, and for transportation of the erection outfit back to the United States at the same rate of freight, requiring the contractor "to ship the material in the proximate monthly installments varying in tonnage from 2,000 to 3,500 tons per month," the 2,000-ton limitation was applicable to shipments of erection outfit back to the United States, as well as to shipments of material and equipment from the United States to the Canal Zone.

Appeal from the District Court of the United States for the Southern District of New York.

Libel in admiralty by the McClintic-Marshall Construction Company against the Munson Steamship Line. Decree for respondent, and libelant appeals. Affirmed.

Appeal from final decree in admiralty entered in the District Court for the Southern District of New York. Libelant was one of the contractors in the building or equipping of the Panama Canal. Respondent is the owner or operator of numerous steamers.

The parties entered into a written contract whereby respondent agreed to "transport from Baltimore, Md., to Colon, Isthmian Canal Zone, approximately 64,000 tons of lock gate material and erection equipment, the distribution and weights of which are to be approximately in accordance with the schedule hereto attached. ❋ ❋ ❋ The Steamship Line also agrees to bring back from Colon to Baltimore, if so desired by Construction Company, the erection outfit at the same rate of freight. ❋ ❋ ❋ The Construction Company agrees, in consideration of the above services, to pay to the Steamship Line at the rate of three dollars and eighty ($3.80) cents per ton of 2,240 pounds, such payments to be in United States currency, or its equivalent, free from all discount or of commission upon the delivery of bills of lading to the Construction Company in Pittsburgh, Pa. The Construction Company agrees to ship the material in approximate monthly installments, varying in tonnage from 2,000 to 3,500 tons per month. By giving 30 days' notice to the Steamship Line, this tonnage can be increased or decreased to meet any emergency that may arise. The material for erection outfit may be forwarded any time after September 1, 1910, and in quantities to suit the convenience of the Construction Company."

"Respondent duly carried to Canal Zone the material and equipment above referred to. Some two years later libelant wished to bring back its "erection outfit," or some of it, from the Canal Zone, and it thereupon tendered to respondent the equipment or "outfit" aforesaid in lots of between 400 and 500 tons. At that time respondent was not operating a north-bound service from the Canal Zone, and it refused to retransport libelant's equipment or outfit back to Baltimore, unless it were tendered at least a 2,000-ton lot. This libelant failed or refused to do, and sent the property back by other carriers at freight rates higher than the price agreed upon in the above written contract.

This suit is brought to recover as damages for breach of that contract the excess freight paid by libelant. The court below dismissed the libel; the libelant appealed.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Harrington, Bigham & Englar, of New York City (George S. Brengle, of New York City, of counsel), for appellant.

Burlingham, Veeder, Masten & Fearey, of New York City (Ray Rood Allen, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). We agree with the court below that the oral evidence casts no light on the question at bar. The matter must be decided solely by interpreting the written agreement of the parties. It is evident that the parties agreed on some limitation in respect of quantum of shipment.

Clearly libelant had no right to offer any south-bound lot of less than 2,000 tons, unless an "emergency" arose. There is no suggestion of any emergency in regard to these north-bound shipments; so that the question is whether the intent of the written agreement was that the 2,000-ton limitation should apply to all shipments, and not only to those going south.

The District Judge ascertained that libelant's equipment would amount to a "fair shipload," and thought the intent reasonably imputable to the parties was that that one shipload was what respondent was to bring back north for libelant. The suggestion is a highly probable one; but the parties said nothing about the matter in their contract writing, and it is from that document that decision must be derived.

On the subject of north-bound shipping the contract is vague; not so vague as to be void (Pearce v. Watts, L. R. 20 Eq. 492); Taylor v. Partington, 7 De G., M. & G. 328), but so loose as to require adjustment to reason; the measure of reason being the intention of the parties, discoverable from the whole of their contract. If it was reasonable to require respondent to furnish a ship for 500 tons bound north, why was it reasonable to limit south-bound offers to not less than 2,000 tons?

Again, if libelant could demand a ship for 500 tons, it could with equal propriety demand one for 25 tons, or perhaps less. There is no way of interpreting this agreement consistently with reason and ordinary business sense, except to read the 2,000-ton limitation as applicable to all shipments, except in case of "emergency," which emergency never arose, so far as this record shows.

For these reasons, we think the refusal of respondent was justified. Decree affirmed, with costs.